UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENKENS & GILCHRIST PARKER            :
CHAPIN LLP and                        :
JENKENS & GILCHRIST,                  :         Index No. 06-CV-9890 (DAB)
A PROFESSIONAL CORPORATION,           :
                                      :         ECF Case
                        Plaintiffs,   :
            v.                        :
                                      :
PC NEWCO LLC,                         :
                                      :
                        Defendant.    :
------------------------------------------------------------X

## ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant P.C. Newco LLC ("Newco"), by its attorneys, Tofel & Partners, LLP, for its Answer to the Complaint of Plaintiffs Jenkens & Gilchrist Parker Chapin LLP ("JGPC") and Jenkens & Gilchrist, a Professional Corporation ("Jenkens"), respectfully alleges as follows:

1.      For its response to paragraph 1 of the Complaint, admits that JGPC is a limited liability company formed under the laws of New York, but denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that both of its partners are citizens of Texas.

2.      Admits, upon information and belief, the allegations of paragraph 2 of the Complaint.

3.      Avers that one of the members of Newco is a citizen and resident of Utah and otherwise admits the allegations of paragraph 3 of the Complaint.

{00023213.}                        - 1 -

4.     For its response to paragraph 4 of the Complaint, avers that there are no allegations of fact pleaded therein, but only legal conclusions asserted to which no responsive pleading is warranted or due.

5.     Admits the allegations of paragraph 5 of the Complaint.

6.     Admits that there exists a written document entitled "Agreement re Basic Separation Terms dated March 31, 2005" ("Separation Agreement"), to which Jenkens, JGPC and Newco are parties, respectfully refers the Court to the Separation Agreement for a complete statement of terms, condition and legal effect; admits that Newco has claimed that Jenkens and JGPC are wrongfully withholding from Newco amounts in excess of $75,000, exclusive of interests and costs; denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning JGPC's and Jenkens' reasons for bringing this lawsuit, and refers to the Complaint as to the relief requested, and denies each and every other allegation in paragraph 6 of the Complaint.

7.     Admits, upon information and belief, that this Court has subject-matter jurisdiction over this action.

8.     Admits that on or about March 31, 2005, many of individual attorneys who were engaged in the practice of law in New York as partners in JGPC, and who were partners in JGPC and also shareholders in Jenkens, (identified in the Separation Agreement as the "New York Shareholders"), resigned from JGPC and ceased being shareholders of Jenkens; and avers that subsequent to March 31, 2005, JGPC was not permitted to practice law or admit new partners; further admits that the New York Shareholders were and remain members of Newco, but denies that they engage in the practice of law through Newco; further admits that on April 1, 2005 many of the New York Shareholders joined the law firm of Troutman Sanders LLP and that many of

them are presently members of or employed by Troutman Sanders LLP and practice law with Troutman Sanders LLP; further admits that the Separation Agreement addresses, among other things, the JGPC accounts receivables, work in process, related client expenses and disbursements, and client retainers and other amounts held on account, as of March 31, 2005, defined in the Separation Agreement as the "New York Inventory," and respectfully refers this Court to the Separation Agreement (with exhibits) for a complete statement of its terms, conditions and legal effect, but except as so admitted and referred, denies each and every other allegation contained in paragraph 8 of the Complaint.

9.     Refers this Court to the Separation Agreement for a complete statement of its terms, conditions and legal effect, and except as so referred, denies each and every other allegation contained in paragraph 9 of the Complaint.

10.     Refers this Court to the Separation Agreement for a complete statement of its terms, conditions and legal effect, and except as so referred, denies each and every other allegation contained in paragraph 10 of the Complaint.

11.     Admits that Troutman Sanders has no interest in the NY Inventory covered by the Separation Agreement; further admits that Newco in not engaged in the practice of law; avers, upon information and belief, that checks and wire transfers were sent to the account identified and described in the Separation Agreement; lacks knowledge or information as to whether the account, described in the Separation Agreement as a lockbox account in the name of JGPC, was also used by Jenkens as its "operating account"; and except as so admitted and averred, denies each and every other allegation contained in paragraph 11 of the Complaint.

12.     Admits that section 6(k) of the Separation Agreement contains, in part, the language quoted at paragraph 12 of the Complaint; refers the Court to the Separation Agreement

for a complete statement of its terms, conditions and legal effect; admits that on or about February 28, 2006, JGPC, by its representative, Patrick Mitchell, sent a letter to Newco, and refers to the letter for an accurate and complete statement of its contents; admits that thereafter there were conversations between Mr. Mitchell and other representatives of JGPC and members of Newco, concerning, among other matters, those set forth in the February 28, 2006, letter; admits that one such conversation may have occurred on or about June 14, 2006, but except as so admitted and referred, denies each and every other allegation contained in paragraph 12 of the Complaint.

13.     Admits that JGPC thereafter sent another letter to Newco and refers to that letter as to its contents; avers that PC Newco has provided Jenkens and JGPC with a reasonable accounting, but except as so admitted, averred and referred denies the allegations contained in paragraph 13 of the Complaint.

14.     For its answer to paragraph 14 of the Complaint, admits that Newco has claimed that Jenkens and JGPC are improperly withholding and refusing to credit or pay over to Newco various amounts, including but not limited to those amounts referenced in this paragraph of the Complaint; further admits that, to date, JGPC and Jenkens have refused to credit or to pay over these amounts to Newco, and further admits that in this paragraph of the Complaint Jenkens and JGPC have denied that such amounts are owing to Newco.

15.     Denies each and every allegation contained in paragraph 15 of the Complaint.

16.     Denies each and every allegation contained in paragraph 16 of the Complaint.

17.     Denies each and every allegation contained in paragraph 17 of the Complaint.

18.     For its answer to paragraph 18 of the Complaint, denies that JGPC and Jenkens are entitled to a declaration that neither owes any amounts to Newco or the other declaratory

{00023213.}                                    - 4 -

relief requested; further denies that either JGPC or Jenkens is entitled to any damages or to any award of attorneys' fees, and denies that the Texas Civil Practice and Remedies Code § 37.001 *et seq*. has any application to this or any other Cause of Action asserted in this Complaint.

## FIRST AFFIRMATIVE DEFENSE

19.    The Separation Agreement, at section 3, describes and identifies the "NY Inventory."

20.    On or about April 4, 2005, Jenkens and JGPC provided Newco with a schedule that listed, by attorney, client name and number and matter number, the matters included in the NY Inventory.

21.    Under section 6(g) of the Separation Agreement, after certain adjustments were made as set forth in that section, JGPC was entitled to receive and retain the first $7 million in "Net Fees" collected on the New York Inventory; Newco was entitled to be paid, receive and retain the second $7 million in "Net Fees" collected on the New York Inventory; and after $14 million in "Net Fees" had been collected, JGPC and Jenkens on the one hand, and Newco, on the other hand, were to split any additional recoveries equally.

22.    Jenkens and JGPC received and retained their $7 million in Net Fees collected on the New York Inventory by September 16, 2005.

23.    As of this date, Newco has not yet received its $7 million in Net Fees collected on the New York Inventory.

24.    The Separation Agreement at section 6(h) further provides that once JGPC and Jenkens have received their first $7 million in Net Fees collected on the New York Inventory, "then Newco and its subagents (including the NY Shareholders) shall have no liability

whatsoever under this Section for any discount, adjustment, forbearance or other accommodation or collection practice whatsoever in respect of any NY Inventory."

25.     Therefore, the remedies and relief sought by plaintiffs are barred, in part, by the terms of the Separation Agreement.

## SECOND AFFIRMATIVE DEFENSE

26.     As set forth in the Counterclaims contained in this pleading, which are incorporated into this Affirmative Defense, Plaintiffs are in breach of their obligations under the Separation Agreement.

27.     Plaintiffs' breaches of their obligations under the Separation Agreement and their other inequitable conduct bar Plaintiffs from obtaining the relief requested.

## THIRD AFFIRMATIVE DEFENSE

28.     Plaintiffs have previously  and repeatedly accepted without challenge, instructions from Newco and/or the New York Shareholders concerning, *inter alia*, write-offs, write-downs and the application of payments against receivables and work in process shown in the New York Inventory, and have made and transmitted to Newco records and reports reflecting that such instructions had been accepted and acted upon.

29.     Newco and the New York Shareholders relied upon plaintiffs' conduct and representations reflecting their acceptance of instructions and recordation of write-offs, write-downs and payments in connection with the New York Inventory.

30.     By reason of the foregoing Plaintiffs are estopped from now questioning or challenging such instructions and record entries made in accordance with such instructions.

31.     By reason of the foregoing Plaintiffs claims are also barred, in whole or in part, by their prior, knowing ratification of some or all of the acts complained of in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

32.    Plaintiffs' claims are barred, in whole or in part, by plaintiffs' unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

33.    Plaintiffs have an adequate legal remedy for any alleged breaches of the Separation Agreement and are not entitled to specific performance or other equitable relief.

## SIXTH AFFIRMATIVE DEFENSE

34.    Plaintiffs have not requested a "reasonable" accounting contemplated by section 6(k) of the Separation Agreement, but would have Newco unreasonably and unnecessarily:

> (i)    account with respect to at least $10 million in collection in the New York Inventory which was paid directly by clients into the lock box which was at all times under the exclusive control of Plaintiffs, who recorded these payments and determined how they would be applied and allocated;

> (ii)    provide "all back up including without limitation ..." copies of checks, wire confirmations and any other documentation transmitted or received with the clients payment (collectively, 'Backup') for all payments made in connection with the New York Inventory since March 31, 2005";

> (iii)    provide a written statement from each respective client confirming the date, amount and payee for each payment made with respect to any portion of the NY Inventory; and

> (iv)    provide proof that neither Newco, any of its members and/or Troutman Sanders received non-cash property in connection with the New York Inventory.

## COUNTERCLAIMS

Defendant-Counterclaim Plaintiff PC Newco LLC ("Newco"), for its Counterclaims against Jenkens & Gilchrist Parker Chapin LLP ("JGPC") and Jenkens and Gilchrist ("Jenkens"), alleges as follows:

35.    Newco is a limited liability company organized under the laws of the State of New York, the members of which are citizens and residents of New York, New Jersey or Utah.

36.    JGPC is a limited liability partnership organized under the laws of the State of New York, the two partners of which are, upon information and belief based on allegations by JGPC and Jenkens in the Complaint filed in this action, citizens of Texas.

37.    Upon information and belief, Jenkens is a professional corporation organized under the laws of Texas with its principal place of business in Texas.

38.    The amount in controversy in this action, exclusive of interest and costs, exceeds $75,000.

39.    Upon information and belief, this Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. .§§ 1332 and 1367(a).

## FIRST COUNTERCLAIM
### (Breach of Contract)

40.    The Separation Agreement, at section 3, describes and identifies the "NY Inventory."

41.    On or about April 4, 2005, Jenkens and JGPC provided Newco with a schedule that listed, by attorney, client name and number and matter number, the fees, client expenses and disbursements and client retainers and other amounts held on account that were included in the NY Inventory as of March 31, 2005.

42.    Under section 6(g) of the Separation Agreement, after certain adjustments were made as set forth in that section, JGPC was entitled to receive and retain the first $7 million in "Net Fees" collected on the New York Inventory; Newco was entitled to be paid, receive and retain the second $7 million in "Net Fees" collected on the New York Inventory; and after $14 million in "Net Fees" had been collected, JGPC and Jenkens on the one hand, and Newco, on the other hand, were to share any additional recoveries equally.

43.    Jenkens and JGPC received and retained their $7 million in Net Fees collected on the New York Inventory by September 16, 2005.

44.    As of this date, Newco has not yet received its $7 million in Net Fees collected on the New York Inventory.

45.    The Separation Agreement, at Section 6(f), provides in relevant part that "[a]ll collections of client expenses and disbursements included in the NY Inventory shall belong to JGPC or J&G, as the case may be.  Payments on any invoice shall be applied first to the outstanding amount of client expenses and disbursements billed in such invoice, if any, and thereafter to the outstanding amount of fees billed in such invoice.  Payments on fees shall be applied first to the invoice specified by the client, thereafter to the earliest other invoice(s) on the same matter.  If no invoice or matter is specified by the client, or if excess remains after application as provided above, payments on fees by the client shall be applied to the earliest invoice for such client."

46.    On or about September 29, 2005, after a client transaction closed, JGPC and Jenkens received, on account of NY Inventory, a payment of $2.5 million from the attorney escrow account dispersing the transaction proceeds, and, in accordance with the terms of the Agreement, also received instructions that this payment was to be applied to pay attorneys' fees and disbursements with respect to certain specified matters, as reflected in specified invoices.

47.    JGPC and Jenkens thereafter confirmed that after this $2.5 million payment was applied to the fees and disbursements outstanding as reflected in the invoices for the specified matters as contemplated by the Agreement (thereby paying in full all fees and disbursements incurred on these matters), the sum of $159,339.60 (in excess of the specified fees and disbursements) remained.  Instead of applying this sum to Net Fees, which would have resulted

{00023213.}                                              - 9 -

in a payment to Newco under the Separation Agreement, Jenkens and JGPC have purported to hold this balance in "reserve" to be applied against other disbursements allegedly owed by this client or by clients alleged to be "related to this client" in connection with different matters and transactions.

48.     Subsequently, when JGPC received payment of certain disbursements incurred in connection with a different transaction and on a different matter, JGPC and Jenkens "released" to Newco a portion of this reserve.

49.     As of the date of this Counterclaim, Jenkens and JGPC continue to withhold as a purported "reserve" the sum of $142,705.

50.     Jenkens' and JGPC's withholding of fees, as a "reserve" to be applied against disbursements on other matters, and their failure to allocate and remit the balance to Newco, are in breach of the Separation Agreement.

51.     As a direct and proximate result of JGPC's and Jenkens' breach of the Separation Agreement Newco has suffered damages of $142,705, plus interest from the date on which the sum should have been, but was not, remitted to Newco.

### SECOND COUNTERCLAIM
### (Breach of Contract)

52.     Newco repeats and realleges paragraphs 35 through 51 of the Counterclaims as if fully set forth herein.

53.     Under section 5 of the Separation Agreement, JGPC and Jenkens assigned to Newco and released any title right, interest or claim with respect to, inter alia "all unapplied retainers and unallocated case collections for the New York Matters outstanding on April 1, 2005.

{00023213.}                                    - 10 -

54.    The Separation Agreement further provides at section 5(c), that all unapplied retainers and unallocated cash collections for the NY Matters outstanding on April 1, 2005, shall be wired in immediately available funds in accordance with the instruction of the clients to the law firms assuming responsibility for the corresponding matters as soon as practicable but not later than July 1, 2005.

55.    Prior to March 31, 2005, JGPC represented the plaintiff class in a class action pending in the United States District Court for the Southern District of New York. The matter was settled and the settlement approved by the Court on or about February 28, 2003.

56.    The settlement provided that over a three year period, Aurora Cassirer, the JGPC partner responsible for the matter, would monitor compliance by the defendants with certain payroll procedures. As compensation, she was to receive in advance, each year for each of three years, the sum of $250,000, which sum was to be applied against fees and expenses incurred in monitoring efforts.

57.    In or about April, 2004, JGPC received the sum of $250,000 in advance payment for the administration of the settlement process for the next ensuing year.

58.    After fees and expenses incurred in monitoring for the periods through March 31, 2005 had been deducted, as of April 1, 2005, there remained on account the sum of $183,958.27 in funds advanced for monitoring purposes.

59.    This amount appears on the New York Inventory as a retainer, held "on account" in anticipation of future services.

60.    From and after April 1, 2005, neither Jenkens nor JGPC had any responsibility for, or performed any services in connection with, the settlement or monitoring obligations thereunder. Rather, those responsibilities remained with Aurora Cassirer, who joined the firm of

Troutman Sanders LLP, and who continued to monitor compliance for the remainder of the three year period.

61.    After April 1, 2005, Aurora Cassirer repeatedly requested that Jenkens and JGPC pay over to Troutman Sanders the balance of the amount held on account as an advance payment for monitoring compliance under the settlement.

62.    Jenkens and JGPC have refused to follow these instructions and have refused to pay over this sum to Troutman Sanders and/or Aurora Cassirer.

63.    Jenkens and JGPC's refusal to transfer the funds held on retainer is in breach of the Separation Agreement.

64.    Newco requests that Jenkens and JGPC be directed to pay over to Troutman Sanders the amounts held on retainer for administering the settlement, in accordance with the instructions of Aurora Cassirer.

### THIRD COUNTERCLAIM
### (Breach of Contract)

65.    Newco repeats and realleges paragraphs 35 through 64 of the Counterclaims as if fully set forth herein.

66.    The Separation Agreement expressly identifies, at section 4, which obligations of JGPC Newco were assumed as of the Effective Date and further provides that "Newco is assuming only the liabilities expressly stated in this Agreement, and shall not be deemed or construed to have assumed any other liability or obligation of any JG Party."

67.    Prior to March 31, 2005, JGPC incurred airfare expenses in the amount of $6,106.05, in connection with a previously planned business development trip to India undertaken by Charles Greenman for JGPC and Jenkens ("Greenman travel expense").

68. The Greenman travel expense is not an obligation assumed by Newco, but rather remained an obligation of Jenkens and JGPC.

69. In breach of the Separation Agreement  JGPC charged the Greenman travel expense back to PC Newco through an improperly taken "Negotiated Trade Adjustment" under section 7 of the Separation Agreement..

70. As a direct and proximate result of JGPC and Jenkens breach of  the Separation Agreement Newco has suffered damages in the amount of $ 6,106.05, plus interest from April 1, 2005.

### FOURTH COUNTERCLAIM
### (Breach of Contract)

71. Newco repeats and realleges paragraphs 35 through 70 of the Counterclaims as if fully set forth herein.

72. The Separation Agreement provides, at section 6(g) that, with respect to certain attorneys under contract with JGPC whose contracts with JGPC contained special compensation arrangements, when fee payments were received from clients in connection with the matters to which these special compensation arrangements applied, the special compensation amount was to be paid (after any mutually authorized costs of collection) first to the attorney entitled to the special compensation before any Net Fees were retained by JGPC (with respect to the first $7 million of Net Fee collections) or paid over to Newco (with respect to the second $7 million of Net Fee collections).

73. The special compensation obligations owed by JGPC to these attorneys under their contracts with JGPC were not assumed by Newco under paragraph 4 of the Separation Agreement, but remained obligations of JGPC.

{00023213.}                                   - 13 -

74.    On or about June 10, 2005, JGPC received a payment of fees in connection with a matter for which an attorney, RC, was entitled by contract to special compensation pursuant to his contract with JGPC.

75.    Jenkens and JGPC, in breach of their obligations under the Separation Agreement, and JGPC in breach of its obligations under its contract with RC, retained the entire amount of the Net Fees and failed and refused to remit the amount due to RC as special compensation.

76.    Newco remitted said funds to RC in consideration of RC's assignment to Newco of the claim for such payment from Jenkins and JGPC.

77.    As a direct and proximate result of JGPC's and Jenkens' breaches of their obligations under the Separation Agreement and JGPC's breach of its obligations to RC, Newco has suffered damages in the amount of $1,598.85.

## FIFTH COUNTERCLAIM
### (For an Accounting)

78.    Newco repeats and realleges paragraphs 35 through 77 of the Counterclaims as if fully set forth herein.

79.    Section 6(k) of the Separation Agreement provides that "Newco and JGPC shall each be entitled to a reasonable accounting of the collections hereunder."

80.    Newco has demanded a reasonable accounting by Jenkens and JGPC of all amounts received by either of them into the JGPC lockbox or otherwise, in connection with any payments received on the NY Inventory and of the distribution, allocation and/or retention of such funds.

WHEREFORE,  defendant-counterclaim plaintiff PC NEWCO LLC demands judgment against plaintiff-counterclaim defendants JENKENS & GILCHRIST PC and JENKENS AND GILCHRIST PARKER CHAPIN LLP as follows:

(1)   dismissing the Complaint each and every cause of action therein;

(2)   On the First Counterclaim, awarding Newco damages in the amount of $142,705.00, together with interest at the legal rate from September 29, 2005;

(3)   On the Second Counterclaim, directing JGPC and Jenkens to pay over to Troutman Sanders, as directed upon the written instructions of Aurora Cassirer, the sum of $ 183,958.27, together with interest at the legal rate from April 1, 2005;

(4)   On the Third Counterclaim, awarding Newco damages in an amount of $6,106.05, plus interest at the legal rate from April 1, 2005;

(5) On the Fourth Counterclaim, awarding Newco damages in an amount of $1,598.85, plus interest at the legal rate from June 10, 2005.

(6)   On the Fifth Counterclaim, directing Jenkens and JGPC to provide Newco with a reasonable accounting of (i) all amounts received by either of them into the JGPC lockbox or otherwise, in connection with any payments received on the NY Inventory and the distribution allocation and/or retention of such funds and directing Jenkens and JGPC to pay over to Newco all amounts be owed by Jenkens and JGPC to Newco under the terms of the Separation Agreement;

(7)   Together with the costs and expenses of this action and such other and further relief as to this Court seems just and proper.

Dated: New York, New York
       December 22, 2006

                                   TOFEL & PARTNERS, LLP

                        By:_____
                            Lawrence E. Tofel, Esq. (LET 8631)
                            Attorney for Defendants PC Newco LLC
                            800 Third Avenue
                            New York, New York  10017
                            (212) 752-0007

{00023213.}                          - 16 -